HART v. PROCEEDS OF THE OAKLAND and another.

*(District Court, N. D. Ohio, E. D.* April Term, 1887.)*

SEAMEN—LIEN FOR WAGES—REMNANTS SAVED FROM FOUNDERED VESSEL.

During a storm, a propeller, which was in a foundering condition, was abandoned by her captain and crew, who saved certain articles belonging to the vessel. These articles were sold, and the creditors of the propeller entered into an agreement to apply the proceeds *pro rata* upon their respective claims. The sailors did not sign the agreement. *Held,* that the latter had a lien upon the proceeds of the articles sold, the same as they would have had against the vessel, for the full amount of their wages.

This was a libel by a seaman on the propeller Oakland. On the seventeenth day of September, A. D. 1883, by the order of her captain, the crew of the propeller, including the libelant, left the propeller, then water-logged and in a foundering condition, in a storm on Lake Erie. They saved the yawl-boat, compass, barometer, clock, and marine glasses. The propeller was still afloat when left, and it was uncertain whether she would continue to float or go to pieces. Under these circumstances the propeller and articles saved were sold for the sum of $500, which was placed in the hands of H. D. Goulder, for the purpose of paying the debts of the propeller. As a preliminary thereto, the principal creditors of the propeller signed a paper by which they approved of said sale at said price, and further agreeing, in consideration of the purchase by Corrigan, as an inducement to said purchase, and with the full understanding that such purchase would not be made but for this agreement on their part, as follows:

"That the said sum of $500 may be paid to H. D. Goulder, and shall be applied *pro rata* upon the debts of said propeller. And if in settling the said debts any debts due to seamen shall have to be paid in full, or any greater than a *pro rata* dividend shall have to be paid such seamen, or any of them, then the balance remaining shall be applied *pro rata* on our claims. And we further agree that upon such payment we, each stipulating for himself, shall and hereby do release said propeller, her boats, engines, tackle, and appurtenances, from all claims and liens on account of any debt or claim against said vessel, etc., which we have or ought to have therein."

None of the sailors signed this agreement. No other part of the vessel or cargo was ever saved or found. Libelant demanded payment in full from Mr. Goulder, who refused to pay him anything, unless he accepted a *pro rata* payment under this agreement. Thereupon, on the eighth day of October, A. D. 1883, this suit was commenced against the proceeds and Harvey D. Goulder. Shortly after, under the thirty-eighth rule in admiralty, libelant filed a petition for an order on Goulder to show cause why he should not bring the money into court, to answer the exigency of the case. The order was made, and Goulder filed an answer, in substance averring that the money in his hands was not, legally speaking, the proceeds of the vessel, and therefore libelant had no lien upon it, and that libelant had refused to accept the money as the proceeds of the vessel, and insisted upon maintaining his lien upon the vessel.

*Mix & White,* for libelant.

In this case it cannot be seriously claimed that, had not the remnants been sold, the libelant would not have had a lien upon them which he could have enforced in this court. Both the libel and the petition to show cause set forth all the facts, and it is immaterial in this cause whether they be treated as proceeding for wages or for salvage. The libelant asks for no greater sum than his wages. No less sum than the wages is ever allowed as salvage to the sailor, if the value of the remnants saved be so great. *The Two Catherines,* 2 Mason, 319, 338–341; citing *Taylor* v. *The Cato,* 1 Pet. Adm. 48, 58; *Giles* v. *The Cynthia,* Id. 203, 204; *Weeks* v. *The Catharina Maria,* 2 Pet. Adm. 424; *Frothingham* v. *Prince,* 3 Mass. 563; *The Saratoga,* 2 Gall. 164, 183; *Coffin* v. *Storer,* 5 Mass. 252. Judge STORY shows that this is also the law of continental Europe. Laws Oleron, art. 3; Laws Wisbuy, arts. 15, 16; Ord. Philip II. 1563, tit. "Average," art. 12; Hanseatic Ord. 1614, tit. 9, art. 5; Ord. Rotterdam, art. 219; Ord. de France, liv. 3, tit. 4, art. 9. Of these, the French, Spanish, Holland, and Danish (Jacobsen, Sea Laws) give the lien for wages, and such was the ruling of Lord STOWELL in *The Neptune,* 1 Hagg. Adm. 227, 239; and see Weskett, Ins. tit. "Wages," art. 17. The supreme court seems to consider it a claim for wages. See *Sheppard* v. *Taylor,* 5 Pet. 675, 710, 711, and *Flaherty* v. *Doane,* 1 Low. Dec. 148.

The libelant having this lien on the remnants, can he proceed against the proceeds of the remnants? In considering this question, the proceeds of the vessel may be treated in the same way as the proceeds of the articles saved. Under the circumstances, the vessel being water-logged, and in a foundering condition when last seen, and actually foundering, the owner, lienholders, and sailors agreeing to treat the proceeds of the sale as standing for the vessel, the proceeds may be considered as representing the vessel in the same way as would the proceeds of a sale of the vessel by the master in case of necessity, (*The Amelie,* 6 Wall. 30,) or on legal process, or in case of restitution in money instead of *in specie.* All parties have treated this money as representing the vessel; no injustice will be done if the court treats it the same way, nor is there any difficulty on admiralty principles.

In one case the ship and freight were wholly lost by wreck, and abandoned to the underwriters. The cargo was saved. A large part of it was sold, and the proceeds were in the hands of the agents of the owners of the cargo. Under these circumstances, a libel *in rem* was filed against the cargo and proceeds to compel contribution in average. It was held that the lien existed, and the action might be maintained against the proceeds in whosesoever hands those proceeds might be found, or against whatsoever represented the property liable. *Insurance Co.* v. *The George,* Olcott, 97.

In another case a vessel was wrecked. None of the cargo was saved. The sailors saved the masts, spars, rigging, anchors, cables, some of the sails, and part of the hull. These were sold. The sailors filed a summary petition in admiralty for wages against these proceeds. Lord STOWELL, after a thorough discussion, held the action well brought. *The Neptune,* 1 Hagg. Adm. 227, 239.

Where a vessel had been seized and sold by a foreign government, the owners had sold their claim, and then the foreign government paid for the vessel, the supreme court held that the lien for wages attached to the money so paid, saying: "This lien is so sacred and indelible that it has on more than one occasion been expressively said that it adheres to the last plank of the ship. *Relf* v. *The Maria,* 1 Pet. Adm. note, 186, 195; [*The Sydney Cove,*] 2 Dod. Adm. 13; *The Neptune,* 1 Hagg. Adm. 227, 239. And, in our opinion, there is no difference between the case of a restitution *in specie* of the ship itself and a restitution in value. The lien reattaches to the thing, and to

whatever is substituted for it. This is no peculiar principle of the admiralty. It is found incorporated into the doctrines of courts of common law and equity. The owner and the lien-holder, whose claims have been wrongfully displaced, may follow the proceeds wherever they can distinctly trace them. In respect, therefore, to the proceeds of the ship, we have no difficulty in affirming that the lien in this case attaches to them." *Sheppard* v. *Taylor*, 5 Pet. 675, 710, 711; *Brown* v. *Lull*, 2 Sum. 443, 447, 452.

In a late case a fishing vessel was lost, but parts of her tackle, rigging, etc., were saved by the sailors, and sold, the proceeds going into the hands of the owners. The sailors filed a libel for wages against the owners to reach the proceeds. The court declined to treat it as a libel *in personam*, but determined it as a suit to reach the proceeds, and say: "There being then a lien on the ship, and of course on her remnants, and the wreck having been sold before the libelants had an opportunity to enforce their remedy, they may follow the proceeds into the hands of the owners, and maintain their libel to the extent of what I may call the assets. Proceedings *in rem* may be maintained, not only when there is a vessel or other thing which can be arrested by the marshal, but also when there is a fund in the possession of persons within the jurisdiction. In England, actions *in personam*, strictly so called, fell into disuse, (*The Clara*, Swab. 3;) but an efficient substitute was found in the process *in rem*, which was served by a monition to the owners to show cause; and this was issued even though the vessel were on a voyage, or belonged to the crown, and therefore was not liable to seizure, or even, in some cases, though the vessel had been totally lost. Coote, Adm. 131 *et seq.*; *The Trelawney*, 3 C. Rob. Adm. 216n; *The Meg Merrilies*, 3 Hagg. Adm. 346; *The Stephen Wright*, 12 Jur. 732." In this country the same practice prevails. So in prize, salvage, and bottomry causes, the suit *in rem* is not defeated by a conversion of the property into money. *Flaherty* v. *Doane*, 1 Low. 148, 150, 151. This case seems fully to sustain the case at bar.

So the thirty-eighth rule in admiralty of the supreme court prescribes that "in cases of mariners' wages, or bottomry or salvage, or other proceedings *in rem*, where freight *or other proceeds of property* are attached to or bound by the suit, which are in the hands or possession of any person, the court may, upon due application, by petition of the party interested, require the party charged with the possession thereof to appear and show cause why the same should not be brought into court to answer the exigency of the suit; and, if no sufficient cause be shown, the court may order the same to be brought into court to answer the exigency of the suit, and, upon failure of the party to comply with the order, may award an attachment, or other compulsive process, to compel obedience thereto."

It seems clear, therefore, that there is a lien for wages enforceable in admiralty against the proceeds of a ship, or remnants of a ship, in whosesoever hands such proceeds may be found, as long as the proceeds can be distinctly traced. How is this lien to be enforced? The case above cited of *Flaherty* v. *Doane*, 1 Low. Dec. 148, asserts that it may be by a libel against the person in whose hands are the proceeds. To the same effect the supreme court in the above-cited case of *Sheppard* v. *Taylor*, 5 Pet. 675, 711, say: "Over the subject of seamen's wages, the admiralty has an undisputed jurisdiction *in rem*, as well as *in personam*; and, wherever the lien for the wages exists and attaches upon proceeds, it is the familiar practice of that court to exert its jurisdiction over them, by way of monition to the parties holding the proceeds. This is familiarly known in the cases of prize and bottomry and salvage, and is equally applicable to the case of wages." In the case above cited of *Insurance Co.* v. *The George*, Olcott, 89, the libel was *in rem* against the cargo and proceeds, and *in personam* against the respondents as holders of the part of the cargo unsold, and of the proceeds of the part of the cargo sold. Lastly,

we have rule 38 in admiralty of the supreme court. The result of these seems to be that the libel may be *in rem*, in form against the proceeds, with a petition under rule 38 to bring the proceeds into court; or it may be *in personam*, in form against the holder of the proceeds; but that in either case it is, in reality, an action *in rem*. In this case the libel is in form against the proceeds, and the holder of the proceeds, with a petition under rule 38. It may be concluded, therefore, that the court has obtained jurisdiction of the proceeds.

No sufficient cause having been shown why the proceeds, or so much thereof as are necessary to satisfy libelant's claim and the costs herein, should not be ordered paid into court, that order should be made. There is no dispute but that, if libelant has a lien on the proceeds enforceable in this court in this proceeding, he should have a decree, and there is no dispute as to the amount. There is therefore no necessity to refer the case for computation.

*H. D. Goulder*, for respondent.

Upon the questions whether this money was the proceeds of the vessel, and whether libelant had a lien thereon, WELKER, J., found that the money in the hands of Goulder was the proceeds of the sale of the remnants of the vessel; and that the libelant had a lien upon the said proceeds in the hands of Goulder, the same as he would have had against the vessel for his unpaid wages, and was not bound to receive the *pro rata* amount thereof; and decreed that Goulder should pay to him the amount of his wages.